E. Dillingham, Inc. *v.* United States    (No. 5258)*

---

*C.A.D. 922.

United States Court of Customs and Patent Appeals, June 8, 1967

*Allerton deC. Tompkins* for appellant.
*Barefoot Sanders*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Alfred A. Taylor, Jr., Sheila N. Ziff* for the United States.

[Oral argument April 3, 1967 by Mr. Tompkins and Mrs. Ziff]

Before WORLEY, Chief Judge, RICH, SMITH, ALMOND, Associate Judges, and WILLIAM H. KIRKPATRICK**

KIRKPATRICK, Judge delivered the opinion of the court:

This appeal by the importer is from the decision and judgment of the United States Customs Court, Second Division (56 Cust. Ct. 392, C.D. 2664), which overruled the importer's protest to the classification of certain merchandise invoiced as "Bata Monoplax Process Unit 'Atlas'."

The collector classified the merchandise as an article having as an essential feature an electrical element or device under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, and dutiable at 13¾% ad val. The importer conceded that the imported article has essential electrical elements but claimed that it is more specifically provided for under paragraph 1643 of the same Act, as shoe machinery, and thus entitled to enter duty free. The pertinent statutory provisions are:

> Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739:
>     Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
>
> \*      \*      \*      \*      \*      \*      \*
>
> Other_____ 13¾% ad val.
> Paragraph 1643 of the Tariff Act of 1930, as modified by T.D. 52739:
>     Shoe machinery, whether in whole or in part, including
>         repair parts _____ Free

The imported merchandise has been described as a slush molding machine consisting of two sections: A Monoplax material manufacturing unit and a Monoplax casting unit. The entire machine is approximately 100 feet long with 86 shoe mold carriers thereon. The material manufacturing unit consists of a mixer and a deaerating tank, where a color pigment is blended with Plastisol (a thermoplastic material) in the mixer and the mixture is conveyed to the deaerating tank where

---

**Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

air is pumped out of the mixture by means of a vacuum pump. The deaerated Plastisol material is then poured into shoe molds at the casting unit. Heat is applied to the molds to cure the plastic material and to form shoes inside the molds. The cured shoes are then removed from the molds with the help of air pressure.

Appellant contends that the imported merchandise is properly classifiable as shoe machinery within the meaning of paragraph 1643 of the statute. To support its contention, appellant has introduced the testimony of three witnesses. Appellant's first witness, one Charles Bara, Jr., testified that he is the assistant plant engineer for the Bata Shoe Co., for whom the merchandise was imported. Mr. Bara described the imported merchandise and testified as to its operation. However, as the Customs Court has found, Mr. Bara's familiarity with the imported merchandise is limited to its operation at the plant where he is employed, as the following cross-examination and re-cross show:

Q. Did the mold come in in this entry that makes that shoe? A. I do not know if the molds came with the entry.

Q. Then, it is quite possible that the machine as it came in that we are talking about could not produce Plaintiff's Exhibit 4? A. The machine is capable of producing it. If they have the mold here at the time, they would have produced it at the time.

Q. The only modification that need be made to the machine, if any, is the mold for this specific type shoe? A. The mold would be the primary object which would have to be changed.

Q. Are the molds easily changeable? A. The molds are ordered. They are attached to the carrier by mechanical means, such as a screw or slot.

Q. Are they easily removable? A. I would say it is not too much of a problem.

    *        *        *        *        *        *        *

Q. Do you have any knowledge of this particular machine outside of your plant? Do you have any knowledge of this type of machine outside of your plant? A. No I don't.

Q. Upon what basis do you say that these features are unique to the manufacturer of shoes? A. I cannot think of any other application than shoes.

Appellant's remaining two witnesses are sales representatives for the Bata Shoe Co. Their testimony is directed to the issue that products made from the imported machines, e.g., overshoes and moccasins, are regarded as shoes in the trade.

The Government contends that appellant has failed, for two reasons, to prove that the imported merchandise is shoe machinery within the meaning of the statute: First, appellant has failed to establish that the products manufactured by the imported machinery are shoes; and second, that appellant's evidence did not establish the chief use of the importation as shoe machinery.

The Customs Court found that for an article to fall within the provisions for shoe machinery as contained in paragraph 1643 of the

statute it must be chiefly used in a manufacturing operation upon shoes. Further, such chief use must be established by positive testimony with respect to merchandise of the same class or kind. *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, C.A.D. 544; *United States* v. *Spreckels Creameries, Inc.*, 17 CCPA 400, T.D. 43835. The Customs Court then concluded that Mr. Bara was not sufficiently qualified to testify as to the chief use of the imported merchandise, and quoted the following statement from our opinion in *United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325:

> Furthermore, the witness Gardel, from his own statements, appears to be insufficiently qualified by experience and familiarity with commercial practice to give credible testimony as to the chief use of the merchandise throughout this country. His testimony relative to the use of the molds in his own restricted business, that he never saw the identical merchandise used outside of his own concern, and his failure to indicate clearly that any other concern or persons made use of the molds for a similar purpose, is not of the convincing character that is here required to overcome the presumption of the correctness of the collector's classification.

We are in agreement with the decision of the court below.

Recently we had occasion to comprehensively review the case law on the issue of chief use. *United States* v. *C.S. Emery & Co.*, 53 CCPA 1, C.A.D. 868, decided January 13, 1966. In *Emery*, we concluded that the case law unqualifiedly holds that the chief, principal or predominant use governs the classification of imported merchandise if a use provision is involved. Under such circumstances, we conclude that the classification of the instant merchandise requires a consideration of use because the statute employed a term, "shoe machinery," which imputes a use.

It is well established that the collector's classification is presumed to be correct, *F. H. Kaysing* v. *United States*, 49 CCPA 69, C.A.D. 798, and that the burden of proving chief use of the imported merchandise is on the importer who protests the classification of the collector, *United States* v. *Bruce Duncan Co., Inc.*, 50 CCPA 43, C.A.D. 817. In the present case appellant has entirely failed to establish any chief use for the merchandise in question. We find the testimony of Mr. Bara is without substantial probative value with respect to the question of chief use. For all we know, the imported machinery may be used in any manufacturing operation where molding is one step. Cf. *Louis G. Freeman Co.* v. *United States*, 58 Treas. Dec. 1060, Abstract 13580, where certain "leather-splitting machines" were deprived of the benefit of free entry as shoe machinery since the machines could be used in any factory where splitting leather was needed for any purpose, including the manufacture of shoes.

The fact that the imported article is being used in the manufacture

of shoes is insufficient to establish chief use. In the case of *United States* v. *Spreckels Creameries, Inc.*, supra, we stated:

It is also the established law that classification according to chief use depends upon use by users, as a whole, of the particular type of commodity involved and not upon actual individual use of the particular shipment in question.

In view of the foregoing, the judgment of the Customs Court is *affirmed*.